

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 18, 1960

Hon. William A. Harrison, Commissioner
State Board of Insurance
International Life Building
Austin, Texas

Opinion No. WW-905

Re: Whether or not the Texas
Business Corporation Act
is now or will become appli-
cable to insurance companies
subject to Art. 3.69 of the
Texas Insurance Code, in
view of H.B. 144, 56th Leg.

Dear Mr. Harrison:

You have asked our opinion on several questions concerning the appli-
cability of the Texas Business Corporation Act (hereinafter referred to as
the "Act") to life insurance companies.

This Act was passed in 1955 and although life insurance companies
may neither organize under nor adopt the Act, the Act, to some extent,
supplements the Insurance Code. Art. 2.01, 9.14A, T.B.C.A.

Attorney General's Opinion WW-490, issued August 13, 1958, held that
the Act supplements the Insurance Code in respect to domestic life insur-
ance companies organized after and foreign insurance companies admitted
to Texas after the effective date of the Act, but not as to domestic insurance
companies organized before or foreign insurance companies admitted to
Texas before the effective date of the Act. Subsequently, the Legislature
saw fit to amend the clause in 1959 so that it now reads as follows:

"...provided, however, that if any of said excepted
domestic corporations were heretofore or are hereafter
organized under special statutes which contain no provi-
sions in regard to some of the matters provided for in this
Act, or any such excepted foreign corporations were here-
tofore or hereafter granted authority to transact business
within this State under any special statute which contains
no provisions in regard to some of the matters provided for
in this Act in respect of foreign corporations, or if such
special statutes specifically provide that the general laws
for incorporation or for the granting of a certificate of
authority to transact business in this State, as the case may
be, shall supplement the provisions of such statutes, then
the provisions of this Act shall apply to the extent that they
are not inconsistent with the provisions of such special
statutes." (Underlined portions added by Acts 1959, 56th
Leg., p. 224, ch. 132; H.B. 144)

Article 3.69 governing life insurance companies provides:

"The laws governing corporations in general shall apply to and govern insurance companies organized or operating under this Chapter 3 in so far as same are not inconsistent with the provisions of this chapter."

Your first question is as follows:

"In view of the amendments of the Texas Business Corporation Act effected by H.B. 144, I request your opinion as to whether or not the Texas Business Corporation Act is now or will hereafter become applicable to all insurance companies subject to Art. 3.69 of the Texas Insurance Code, regardless of when domestic insurance companies were organized and foreign insurance companies were admitted to Texas. I further request your opinion as to the date upon which the Texas Business Corporation Act became or will become applicable to such companies."

There is some argument advanced that since general business corporations existing on the effective date of the Act were not to be governed thereby, the same is true of insurance companies. Despite this contention, we hold that a literal reading of the 1959 amendment to 9.14A evidences a clear legislative intent to bring all insurance companies, regardless of when organized or admitted to Texas, under one set of corporate laws supplemental to the Code as of the effective date of such amendment. This Act passed in 1955 was not to then become generally applicable to existing corporations (Sec. B of 9.14), unless said corporations so chose to be governed thereby and adopted the Act through the procedure set out in Article 9.14, Section C. Unless so adopted, the Act, by Section D of this Article was postponed five years as to existing corporations. But under the provisions of Section E of 9.14, the Act became automatically effective at the expiration of this time limitation as to those corporations not having previously adopted it. Both Sections D and E specifically exempt those corporations set out in Section A of 9.14.

Furthermore, Sections B, C, D and E of 9.14 all contemplate the ability of the corporations discussed therein to adopt the provisions of the Act, which insurance companies cannot do. Therefore, it is our opinion that these sections were not intended to apply to insurance companies.

As previously stated, it has been held by this office that the provisions of the Texas Business Corporation Act supplement the Insurance Code insofar as domestic insurance companies organized after and foreign insurance companies admitted to Texas after the effective date of the Act and we now hold that as of the effective date of the amendment to Article 9.14A (August 11, 1959), the provisions of the Act, where not inconsistent, supplement the Code insofar as domestic life insurance companies organized

before and foreign life insurance companies admitted to Texas before the
effective date of the Corporation Act (September 6, 1955).

All your remaining questions turn on the issue of whether the provi-
sion of Article 2.17B of the Act, limiting the allocation of capital funds to
surplus, applies to life insurance companies issuing no-par value stock,
governed by Article 3.69 of the Insurance Code.

While there is no express language in the Insurance Code dealing with
the percentage of capital allocable to surplus such as is found in 2.17B of
the Act, the question is whether or not such limitation as presented by 2.17B
of the Act is inconsistent with the provisions of the Insurance Code.  The
critical sentence of Article 2.17B in issue here is quoted as follows:

> ". . .Within a period of sixty (60) days after the
> issuance of any shares without par value, the board of
> directors may allocate to capital surplus not more than
> twenty-five per cent (25%) of the consideration received
> for the issuance of such shares. . .."

Attorney General's Opinion WW-360, issued February 10, 1948, concern-
ing the required minimum capital and surplus of a life insurance company
issuing stock on a no-par value basis, held that:

> "The required minimum capital of a life insurance
> company issuing no-par stock pursuant to Article 3.02a is
> $100,000.00 and its required minimum surplus is $100,000.00;
> provided, however, that at the time such a company is incor-
> porated, or before its charter may be amended so as to
> authorize the issuance of no-par shares, the stockholders
> of such a company must have in good faith subscribed and
> paid for 50% of the authorized no-par shares, which amount
> so paid may not be less than $250,000.00. . .."

The application of 2.17B of the Act to life insurance companies issuing
no-par value stock would require a proposed company to begin business with
a minimum of at least $400,000.00 in order for the $100,000.00 minimum sur-
plus required by the Code to constitute not more than 25% of the proceeds
from the sale of no-par value stock as required by this provision of the Act.
This result would also defeat the express minimum of $250,000.00 permitted
to no-par life insurance companies by Article 3.02a of the Code.  This ano-
maly arises from the distinctive treatment the Legislature has given to the
capital structure of insurance companies.  The requirement of a minimum
surplus is unique and no similar requirement is made for general business
corporations.  In our view, the restriction of 2.17B simply does not take
into account or even contemplate a required minimum surplus and hence
is inconsistent with the Insurance Code.

Furthermore, the reason for restricting the portion of the proceeds

from the sale of no-par stock which may be placed in the surplus of a business corporation is not present in the case of a life insurance company. The capital of life insurance companies is in the nature of a guarantee fund, the impairment of which is strictly regulated by the Insurance Code, whereas the capital of a business corporation can be spent and even greatly impaired as long as the corporate debts are regularly paid as they mature. The very function and nature of surplus in the two organizations is diverse. The extent to which a life insurance company can grow and add new business is governed largely by the amount of its surplus funds available. The restriction imposed by 2.17B would virtually defeat the growth of no-par life insurance companies and thereby frustrate the provisions of the Insurance Code authorizing their creation.

We, therefore, hold that the restriction on the percentage of capital funds allocable to surplus in Article 2.17B of the Texas Business Corporation Act is inconsistent with the provisions of the Texas Insurance Code and, therefore, is not applicable to life insurance companies issuing no-par value stock.

Since we have answered the basic question in your request by holding that the restriction on the percentage of capital funds allocable to surplus in 2.17B of the Act is inconsistent with provisions of the Insurance Code governing no-par life insurance companies, there is no necessity to consider specifically each question in your request concerning the time, manner and limitation of the effect of 2.17B on life insurance companies.

## SUMMARY

The Texas Business Corporation Act supplements the provisions of the Texas Insurance Code dealing with life insurance companies, where not inconsistent therewith. However, the restriction on the percentage of capital funds allocable to surplus in Article 2.17B of the Texas Business Corporation Act is inconsistent with the sections of the Insurance Code dealing with life insurance companies issuing no-par value stock and, therefore, is not applicable thereto.

Very truly yours,

WILL WILSON
Attorney General of Texas

By Richard A. Wells
Richard A. Wells
Assistant Attorney General

RAW/pe

APPROVED:

OPINION COMMITTEE:

C. K. Richards, Chairman
Milton Richardson
John Reeves
Houghton Brownlee
Charles Cabaniss


REVIEWED FOR THE ATTORNEY GENERAL
BY:
        Leonard Passmore